GARRETT, J., dissenting.
In concluding that the evidence of defendant's use of the word "nigger" was admissible notwithstanding *836 OEC 403, the majority holds that the trial court could permissibly determine that, under the circumstances here, the probative value of that evidence was not "substantially outweighed by the danger of unfair prejudice." OEC 403. I respectfully disagree.
Evidence is unfairly prejudicial when it has "an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one." State v. Lyons , 324 Or. 256, 280, 924 P.2d 802 (1996). We have held that such an "undue tendency" exists with racial epithets-in fact, we have found the point so obvious as not to require explanation. See Bray v. American Property Management Corp. , 164 Or. App. 134, 144, 988 P.2d 933 (1999) (stating simply that the potential for prejudice arising from such evidence was "manifest"). If that is true, then it must be especially true for the word that has been called the "nuclear bomb of racial epithets." Randall Kennedy, Nigger: The Strange Career of a Troublesome Word 28 (2002); see also Swinton v. Potomac Corp. , 270 F.3d 794, 817 (9th Cir. 2001) (" '["Nigger" is] perhaps the most offensive and inflammatory racial slur in English [.]' " (quoting Merriam-Webster's Collegiate Dictionary 784 (10th ed 1993))); Monteiro v. Tempe Union High School Dist. , 158 F.3d 1022, 1034 (9th Cir. 1998) (calling the word "the most noxious racial epithet in the contemporary American lexicon").
In this case, therefore, the evidence that defendant, who is white, called Officer Saunders, who is black, a "nigger" and used that word several times during his ride to the police station had considerable potential to create unfair prejudice by branding defendant as a contemptible racist and "suggest [ing] a decision" to the jury on that basis. The evidence was admissible under OEC 403 only if that potential for unfair prejudice did *998 not substantially outweigh the evidence's probative value.
But the probative value was slight, at best. As everyone agrees, defendant's racial views had no relevance to any issue in the case. The state's theory is that defendant's use of the epithet was relevant to show that defendant hated police and that he acted intentionally. However, the state offered far more direct and relevant evidence on that *837 score, including defendant's actual statement that he "hated the police," his other statements disparaging police, and his boast about having "kicked" Officer Huntinghouse's "ass." In light of that powerful evidence, the fact that defendant also used the word "nigger" to describe his dislike of police was cumulative. See State v. Zimmerlee , 261 Or. 49, 54, 492 P.2d 795 (1972) ("Although we have held that the state may prove its case 'to the hilt,' that privilege is not open to the state in circumstances where its exercise would unnecessarily expose a defendant to prejudice."); see also State v. Knight , 343 Or. 469, 481, 173 P.3d 1210 (2007) (concluding that the state's evidence for impeaching the defendant was "by no means essential" when it could have achieved the same result through other means); State v. Mayfield , 302 Or. 631, 645-46, 733 P.2d 438 (1987) (concluding that the state had little need for "uncharged misconduct evidence" to rehabilitate a witness's credibility when the witness's own testimony achieved the same result); State v. Parker , 285 Or. App. 777, 786, 398 P.3d 437 (2017) (concluding that, "[i]n the face of a nonprejudicial evidentiary equivalent, the state has not demonstrated any need to introduce" other prejudicial evidence). Accordingly, because the probative value of the evidence was minimal and the potential for unfair prejudice was great, admission of the evidence was not a legally permissible outcome and the evidence should have been excluded under OEC 403.
In reaching its contrary conclusion, the majority assigns more probative value to the evidence than it deserves. The cases cited above do not support the majority's suggestion that the state had special need for the evidence merely because it was not "duplicative" of other evidence of the same fact. I will not belabor that point; I agree that the word "nigger" is "qualitatively distinct" from the state's other evidence-but only in its inflammatory nature, not in a way that gives it great probative value in light of that other evidence.
The majority's reasoning is also problematic when it comes to the issue of prejudice. To the extent that the majority regards the word "nigger" as merely an example of "caustic language" that lacks much potential for unfair prejudice, *838 I simply disagree, and our case law is to the contrary. Bray , 164 Or. App. at 144, 988 P.2d 933 (potential for prejudice arising from such evidence was "manifest"). But, as I understand its reasoning, the majority does not actually deny the uniquely inflammatory power of the word; rather, it suggests that, notwithstanding that power, jurors should be trusted (or, at least, that a trial court may reasonably decide to trust jurors) to "calmly and dispassionately" weigh all of the evidence, give racial epithets whatever legitimate weight they deserve, and not be unduly distracted.
Such reasoning is contrary to the rules of evidence. Where evidence has the potential to be unfairly distracting, it is no answer to say that a juror will successfully "check her or his own assumptions and prejudices at the courthouse door," follow the trial court's instructions, and give the evidence whatever weight it legitimately deserves. The rules of evidence reflect objective judgments about the quality of information and accordingly regulate the flow of that information to the jury, regardless of what level of confidence we may have that jurors would arrive at those same judgments on their own. If we simply trusted human fact-finders to give all information appropriate weight, the rules could be much shorter.
I respectfully dissent.